Ruffin, Chief Justice.
 

 Although the use by a firm of money, borrowed by one of the partners, may be evidence that it was borrowed for the partnership, and upon its credit, yet it may be doubted whether such an inference is admissible, when the borrowing partner gives his
 
 own
 
 separate security and obligation for the amount. It is distinguishable from the case of
 
 Horton
 
 v.
 
 Child,
 
 4 Dev. 460, because there a joint debt, both in law and in- fact, was constituted by the sale of the goods to the partnership, and the obligation thereon of the one partner, was not me'rge(^ in t'le bond subsequently given by the other., But in this case, the question is, whether there ever was a joint ¿gfjj-. that is to say, whether the contract was made with the firm, or made with Hobson individually. The money was advanced to Hobson, and his separate note taken for it; and it does not appear, that at the time any reference was made to the partnership, either as the beneficial borrower’ or.as being liable for the repayment. The express contract at the time of the loan with the borrowing partner, it should seem, ought to prevent the lender from after-wards making himself the creditor of the firm. That seems to be a fair inference from the form of the security.
 
 Siffkin
 
 v.
 
 Walker, 2
 
 Camp. Rep. 308.
 
 Emly
 
 v.
 
 Lye,
 
 15 East, 7. But if that may be explained by evidence, that the loan was on the credit and for the business of the partnership, notwithstanding appearances to the contrary; yet we deemed it certain, that his Honor erred in. stating to the jury in the alternative, that the defendant was liable if the money was advanced on the credit of the firm,
 
 “or
 
 was applied to the benefit of it.” The last part of the alternative can only be understood to mean, that the firm was the debtor, simply because the money was used by
 
 *233
 
 Hobson on the joint business, although he had not only given his separate bond for it, but had actually borrowed it on his individual credit. The proposition is too unjust to be deemed reasonable or legal. One partner frequently borrows the very capital stock which' he puts in, and on which his share of the profits is to grow; and yet this would make his copartners liable to the lender.- When a partnership gets merchandize, which was bought by one of the members, there is a clear ground for saying that the purchase was made by the firm. But, Lord Eldon observes, it is not enough to prove that
 
 money,
 
 borrowed by an individual partner, goes into the partnership estate, to make the partners liable. He may have borrowed it and paid it in fulfilment of the articles; or to replace sums improperly abstracted by him; -or to reduce his account; or for many other purposes. In
 
 Bevan
 
 v.
 
 Lewis,
 
 1 Sim. 376, it was held, that if' a partner borrow money on his own security only, it does not become a partnership debt, although applied to partnership purposes, and with the knowledge of the other partner. The borrowing partner is the creditor of the firm, and not the original lender. The same point is decided in
 
 Jaques
 
 v.
 
 Marquand,
 
 6 Cowen, 497. Admitting therefore the declarations of Hobson to be admissible evidence and true, they did not establish a case for the plaintiff. They do not contradict the inference from the security given by him, that the money was taken up on his own credit exclusively, but rather confirm it. He says only, that he laid out the money in slaves, which the defendant received and sold; but does not say that the money was lent or borrowed for the firm or in its name.
 

 But if those declarations had purported distinctly to affirm those facts, the Court is of opinion that they would not have been competent, and ought not to have been received for that purpose. They are not the declarations of a partner in the course of transacting partnership business, but were made long after the notorious dissolution of the partnership, and after this suit had been pending three years, and pretty obviously to be used as evidence upon the trial. They were received probably upon the
 
 *234
 
 authority of the case of
 
 Wood
 
 v.
 
 Braddick,
 
 1 Taunt. 104. But we think the present is out of the reasoning in that case. ^ different principle, indeed, has prevailed in many of the courts of this country, which is, that after a dissolution, the acknowledgment of one partner of an account, or of a fact, cannot bind the other, except to repel the statute of limitations.
 
 Hackley
 
 v.
 
 Patrick,
 
 3 John. 536.
 
 Walden
 
 v.
 
 Sherburne,
 
 15 John. 424.
 
 Baker
 
 v. Stackpoole, 9 Cowen, 420.
 
 Shelton
 
 v.
 
 Cocke,
 
 3 Mumf. 191. And in
 
 Bell
 
 v.
 
 Morrison,
 
 1 Peters, 351, the Supreme Court of the United States went so'far as to lay it down that such an acknowledgment did not take a case out of thé statute of limitations. With us it is decided otherwise in
 
 M'Intyre
 
 v.
 
 Oliver,
 
 2 Hawks, 209 ; and we caiinot therefore adopt that Proposition’of
 
 Bell
 
 v.
 
 Morrison.
 
 Nor are we under a necessity in this case of expressing a concurrence in the other cases cited ; for this is not an acknowledgment of the amount merely of a partnership debt, of which’ the-existence is proved by other evidence; but in the absence-of all other evidence of a dealing by the plaintiff with the partnership or with Hobson as one of the partners, it is an attempt to
 
 create
 
 a joint liability by the admission singly of one of the partners after a dissolution. It stands here much upon the same ground with an attempt to prove the partnership by such an admission. It is precisely the same case, as if the present suit had been against both Hill and Hobson, and the latter had suffered judgment by default or by
 
 nil dicit;
 
 which surely would 'not overrule the plea of the general issue by the other defendant. In
 
 Wood v. Braddick,
 
 the consignment was made in 1796-,, the dissolution took place in 1802 as of 1800, and Cox’s letter, stating the balance was written in 1804. It was therefore clear that
 
 prima facie
 
 the partnership, and not Cox,' was originally liable; and the questions were, whether the letter of 1804 was evidence to repel the statute, and also of the balance. It was held that it was, on the principle that “ the dissolution is only with regard to things future, not to those past; for with regard to the latter, the partnership continues and always must continue.” But the question is, what things past are meant ? Certainly, only
 
 *235
 
 those ■which concern the partnership. To make the admission of one partner after the dissolution affect the other, it must be shown, otherwise than by that admission, that the subject to which the admission relates did concern the joint dealing. If it were not so, it. would be in the power of one person, not upon oath, to charge another with any sums, at any time, simply because they had once been partners, by admitting that, while partners, they contracted a joint debt. Such a rule is,too dangerous to be tried. But the case does not stop there. This is not only an attempt to charge one man upon the admission of another, but to charge him'for a debt, with which the other is apparently exclusively chargeable upon his own separate bond, and will so remain exclusively chargeable, unless by his admission he can throw a part of it on the defendant. There could not be a stronger case for rejecting the declarations; upon the ground of the suspicions thrown upon them by the relation of the parties, and the interest of the person making them, as well as that they are mere declarations, not on oath. There is
 
 prima facie
 
 evidence that Hobson alone contracted the debt; and conclusive evidence that he gave as the security his own separate bond; so that apparently at least he alone is liable. The
 
 only
 
 evidence on which the defendant is to be made liable to the plaintiff, and for contribution to Hobson, consists of the declarations -of Hobson himself, made long afterwards, that the debt was originally contracted on the joint credit of himself and the defendant. They cannot be satisfactory to the mind, of the truth of the matter declared, but may mislead a jury; and therefore ought not to have been received.
 

 
 *234
 
 The case of M'Intyre v. Oliver, 2 Hawks, 209.
 

 
 *235
 
 In the opinion of the Court, the judgment of the Superior Court is erroneous and must be reversed ; and a
 
 venire de novo
 
 awarded.
 

 Pek Cukiam. Judgment reversed.