Bkonson, J.
 

 The question is on the statute of limitations; and the case is shortly this : The plaintiff sues on a note made by three partners, on the first day of May, 1831, and payable immediately. The partnership was dissolved in the spring of 1832; the suit was commenced in July, 1847, more than sixteen years after the cause of action had accrued; and the jury find a promise by “ John Van Keuren, one of the defendants,” within six years before action brought: but they find no promise by either of the other defendants. The new promise by John Van Keuren was made more than nine years after the partnership was dissolved; and more than four years after an action upon the note had been barred by the statute of limitations. It cannot but strike every one with some degree of astonishment that the promise of one, made at such a time, and under such circumstances, should bind all of the defendants. But stih the question must be considered upon authority; and if the rule has been so settled, it must be followed, whatever we may think of it as an original proposition.
 

 
 *525
 
 Before looking at the cases, I will inquire, for a moment, how the matter stands upon principle. And however much it maybe out of the ordinary course, I will begin by referring to the statute. The words are—“the following actions [including assumpsit] shall be commenced within six years next after the cause of such action accrued, and not after.” (2
 
 R. S.
 
 295, § 18.) If the plaintiff sues on the note, “ the cause of action accrued” more than sixteen years before the suit was commenced, and of course the action is barred. There is but one possible mode of escaping this difficulty; and that is by saying, that the plaintiff does not sue upon the note, but upon the new promise ; treating it as a new contract, springing out of, and supported by, the original consideration. That will do very well where the original promise was made by one; or if by more than one, where all join in making the new contract. But in this case, the new contract was made by only one of the three original debtors; and the question is, what binds the other two ? As they did not contract for themselves, it is not their agreement, unless John Van Keuren, who made the new promise, had authority to contract for them. The only authority claimed for him is, that he had before been the partner of the other two. This leads to an inquizy concerning the principle on which each partner can bind all his associates. And it is generally agz’eed, that it is the principle of agency. Each partner, when acting within the scope of the partnership, is deemed to be the authorized agent of all his fellows. The authority is presumed from the natuz-e and necessity of the1 case; for without it, third persons would not be safe in dealing with one of the associates, and the business of the partnership could not bo carried on with success. Now, how long does this presumed agency continue ? Clearly, no longer than the necessity for it exists ; and for most purposes, the necessity ceases with the termination of the partnership. When that is dissolved, there is no longer any gz’ound for pz-esuming an agency, except as to such things as are indispensable in winding up the concezms of the company. If there be no agreement to the contrary, it may be presumed that each partner still has authority to dispose of the partnership y roperty,
 
 *526
 
 to collect, adjust and pay debts, and give proper acquittances But there is .no ground whatever for presuming a power to make new promises or engagements in the name of the firm, even though they only change, without increasing the prior obligations of the partners. We shall presently see, upon authority, that they have no such power.
 

 In reference to the statute of limitations, a distinction has sometimes been taken between a new promise made before the statute has run, and one made after the parties have been exonerated by the lapse of time. • That would sustain the defence in this case; for the statute had run upon the claim long before the new promise was made. But the defence may be rested upon the still broader ground, that the dissolution of the partnership was a revocation of the agency, and the power of the partners to bind each other by new engagements ceased from that moment.
 

 The statute of 21
 
 James
 
 1, c. 16, which limited actions on promises to six years, was not very well received by the legal profession; and although the early decisions under it are not open to much observation, it was not long before the courts began to regard the statute with disfavor, and to resort to the most subtle constructions for the purpose of restricting its influence. There was a period when one who was spoken to on the subject of an old debtj could not well give a civil answer, without saying enough to take the case out of the statute.1 At a later period, and since the commencement of the present century, the courts began to regard this as a beneficial statute—a statute of repose—and commenced the difficult task of retracing their steps.” But there were many obstacles in the way of the backward movement; and the legislature, both here and in England, took up the matter, and went beyond the old statute, by requiring the new promise or acknowledgment to be in writing.3 In consequence of the early departure from principle in the construction of the statute, the different views which prevailed at different periods, and the unequal pace of the courts in attempting to get back on to solid ground, the books are full of conflicting decisions; and any attempt to reconcile them
 
 *527
 
 would be a useless waste of time. I shall not, therefore, go into a general review of the cases.
 

 The leading case on this question in England, is
 
 Whitcomb
 
 v.
 
 Whiting, (Doug.
 
 652,) where Lord Mansfield and his associates held, that part payment, within six years, by one of four joint and several makers of a promissory note, took the case out of the statute of limitations as to all of the makers. That case is distinguishable from the one before us in two particulars. First, it does not appear in that case that the action was barred prior to the payment; while here, the statute bar was complete long before the new promise was made.. Second, that was the case of a payment, which has been deemed much safer ground to go upon than a new promise, or acknowledgment. Lord Tenterden’s act, (9
 
 G.
 
 4,
 
 c.
 
 14,) which requires a writing in the case of a new promise or acknowledgment, leaves the effect of a payment untouched; and such, in substance," is the provision in our recent code.
 
 (Stat.
 
 1849,
 
 p.
 
 638, § 110.) In
 
 Wyatt
 
 v.
 
 Hodson,
 
 (8
 
 Bing.
 
 309,) Tindal, C. J. said: “ The payment of principal or interest stands on a different footing from the making of promises, which are often rash or ill interpreted, while money is not usually paid without deliberation; and payment is an unequivocal act, so little liable to misconstruction as not to be open to the objection of an ordinary acknowledgment.” There is force in these remarks.
 

 But I do not intend to lay much stress upon the distinctions between that case and the one at bar. Lord Mansfield made no distinction between the influence of a payment and a promise ; and if his reasoning is sound, it reaches this case. His words are,! “ payment by one, is payment for all, the one acting, virtually, as agent for the rest; and, in the same manner, an. admission by one, is an admission by all; and the law raises the promise to pay, when the debt is admitted to be due.” Nothing but the great name of Lord Mansfield could have given currency to this reasoning. It is plain enough that “ payment by one, is payment for all,” so far as relates to the satisfaction of the debt: but that fact neither shows, nor has it any tendency to show, a new promise or acknowledgment by the other joint debtors. Payment is nothing more than an admis •
 
 *528
 
 sion that the debt is due; and like any other admission, it can only affect the party who makes it, unless he has authority to speak for others, as well as himself. A joint debtor has no such authority It cannot be justly inferred from the relation which he sustains to the other joint debtors; and though he may conclude himself by an admission, he cannot conclude them. His lordship, after saying, that “ payment by one, is payment for all,” adds—“ the one acting virtually, as agent tor the rest.” If the meaning be, that there is such an agency as will i,,ake the payment by one enure to the benefit of all the joint debtors, the reasoning is well enough; but it proves nothing on the point in controversy. If the meaning be, that one joint debtor is the agent of the others for the purpose of making admissions to bind them, that was assuming the very point to be proved ; and the assumption had neither authority nor argument to support it. There is nothing in the relation of joint debtors from which such an agency can be inferred. A joint obligation is the only tie which links them together; and from the nature of the case, payment of the debt is the only thing which one has authority to do for all. I am persuaded that, such a decision would not have been made, had it not been for the strong disposition which prevailed at that time to get round the statute of limitations. It was in direct conflict with
 
 Bland
 
 v.
 
 Haselrig,
 
 (2
 
 Ventris,
 
 151.) which was decided ninety years before, when the statute was in better repute ; and which is an authority in point, against the judgment under review. The case was this : in assumpsit against four, the statute of limitations was pleaded, and the verdict was, that one of the defendants promised within six years, but the others did not. Upon this verdict, judgment was rendered for the defendants. The case of
 
 Whitcomb
 
 v.
 
 Whiting,
 
 has been several times questioned in England, and in
 
 Atkins
 
 v.
 
 Tredgold,
 
 (2
 
 B. & C.
 
 23,) the court seemed much disposed to disregard it. But the authority of a great name has proved more than a match for common sense; and the decision in Douglass is now regarded as good law in England.
 
 (Pecham
 
 v.
 
 Raynal, 2 Bing. 306; Pritchard
 
 v.
 
 Draper,
 
 1
 
 Russ.
 
 &
 
 Myl.
 
 191.) But it is not so in this country. Although the case in Douglass has been followed in some of the states, it has
 
 *529
 
 been questioned in others; and in several of the states, and by the supreme court of the U. S. it has been wholly disregarded. I shall hereafter have occasion to refer to some of the cases.
 

 I will now inquire how the question stands in this state. It first came up in
 
 Smith
 
 v. Ludlow, (6
 
 John.
 
 267,) nearly forty years ago, when the statute of limitation was in bad repute, and when few men ventured to think for themselves after Lord Mansfield had spoken. The court said, that where the original debt was proved, the confession of one partner, though made after the dissolution of the partnership, would bind the other, so as to prevent him from availing himself of the statute of limitations. This was said on the authority of
 
 Whitcomb
 
 v.
 
 Whiting,
 
 already mentioned, and
 
 Jackson
 
 v.
 
 Fairbank,
 
 (2
 
 H. Black.
 
 340,) which was decided on the authority of the same case, though it went a more extravagant length. Of the case in Douglass I have already spoken ; and of the case in Blackstone it is enough to say, that it has been condemned in England,
 
 (Brandram
 
 v.
 
 Wharton,
 
 1
 
 B. & Ald.
 
 463,) and overruled in this state.
 
 (Rosevelt
 
 v.
 
 Mark,
 
 6
 
 John. Ch.
 
 266, 291.) I may add, that what was said in
 
 Smith
 
 v.
 
 Ludlow,
 
 about binding one partner by the confessions of the other, made after the partnership had been dissolved, was not necessary to the decision of the cause; for there had been confessions by both of the partners which the court held sufficient to take- the case out of the statute, without making the admission of one evidence against the other. Still, on the authority of this case, and those in Douglass and Blackstone, it was decided in
 
 Johnson
 
 v.
 
 Beardslee,
 
 (15
 
 John.
 
 3,) that the promise of one joint debtor was sufficient to take the case out of the statute. And in
 
 Patterson
 
 v.
 
 Choate,
 
 (7
 
 Wend.
 
 441,) it was held, that although one partner cannot, after a dissolution, bind the other by a new contract, yet his acknowledgment of a previous debt due from the partnership, will bind the other partner, so far as to prevent him from availing himself of the statute of limitations. This doctrine has been mentioned on other occasions;
 
 (Hopkins
 
 v.
 
 Banks,
 
 7
 
 Cow.
 
 653;
 
 Rosevelt
 
 v.
 
 Mark,
 
 6
 
 John. Ch.
 
 291;
 
 Dean
 
 v.
 
 Hewit,
 
 5
 
 Wend.
 
 262;) but there are, I believe, no other decisions in this state to the like effect. In
 
 Patterson
 
 v
 
 *530
 

 Choate,
 
 the six years had run, and the bar was complete before the acknowledgment was made. No one, I venture to say, who does not go upon the ground that the statute of limitations ought not to be enforced, can assign a solid reason for the distinction between contracting a new debt against a former partner, and making an acknowledgment which shall charge him with that which, though once a debt, has ceased to be so by the operation of law. I agree with the late Chief Justice Spencer, in
 
 Sands
 
 v.
 
 Gelston,
 
 (15
 
 John.
 
 519,) that “ the statute of limitations is the law of the land;” and that in point of princi pie, “ there is no substantial difference between a debt barred by the statute of limitations, and a debt for the payment of which the debtor has been exonerated by a discharge under a bankrupt or insolvent act.” Still, if there was no counterbalance in the adjudications of our own courts, I should feel bound to follow the two or three cases which support the plaintiff’s claim, and leave reforms to the legislature. But those cases conflict, in principle, with many other decisions in this state; and cannot be supported.
 

 Although the rule is different in England in relation to admissions concerning partnership transactions,
 
 (Wood
 
 v.
 
 Braddick,
 
 1
 
 Taunt.
 
 104,) it has been settled by a series of adjudications in this state, that the authority of partners to bind each other by any undertaking or admission, even though it relate to partnership transactions, ceases with the partnership. In
 
 Hackley
 
 v.
 
 Patrick,
 
 (3
 
 John.
 
 536,) although it was mentioned in the notice of dissolution, that Hastie, one of the partners, would adjust the unsettled business of the partnership, it was held that his subsequent admission of a balance due from the firm to the plaintiffs on account, would not bind his copartner. The court said it was “a clear case. After a dissolution of a copartnership, the power of one party to bind the others, wholly ceases. There is no reason why his acknowledgment of an account should bind his copartners, any more than his giving a promissory note in the name of the firm, or any other act.” This doctrine was reasserted and applied in
 
 Sanford
 
 v.
 
 Mickles,
 
 (4
 
 John.
 
 224,) •where it was held that a partner to whom authority had been given on the dissolution to collect and pay debts, could not en
 
 *531
 
 dorse a promissory note belonging to the firm so as to pass the title to the indorsee.
 
 (See Yale
 
 v.
 
 Eames,
 
 1
 
 Metc.
 
 486.) In
 
 Walden
 
 v.
 
 Sherburne,
 
 (15
 
 John.
 
 409,) it was again decided, that the admission by one of the partners, after a dissolution, of a balance against the firm, did not bind the other partner. And where the notice of dissolution stated that the business would be settled by one of the partners, who was duly authorized to sign the name of the firm for that purpose, it was held, that such partner could not renew a note previously given by the firm, and which was running in the bank at the time of the dissolution.
 
 (National Bank
 
 v.
 
 Norton,
 
 1
 
 Hill,
 
 572.)
 
 Mitchell
 
 v.
 
 Ostrom, (2 Hill,
 
 520,) asserts the same general doctrine. And in
 
 Baker
 
 v.
 
 Stackpoole,
 
 (9
 
 Cowen,
 
 420,) the rule that one partner, after a dissolution, cannot bind his fellows by an admission relating to partnership transactions, was sanctioned by the unanimous judgment of the court for the correction of errors.
 

 Enough has, I think, been said to justify the remark, that the two or three cases on which the plaintiff relies cannot be supported. They conflict in principle with a series of decisions spreading over a period of forty years, and including a determination of the court of last resort.
 

 But this is not all. Since the supreme court first fell into the error of following
 
 Whitcomb
 
 v.
 
 Whiting,
 
 the course of decision upon the statute of limitations has undergone a great change in this country, and particularly in this state. At the former period, the statute amounted to little more, in judicial construction, than a ground for presuming the debt paid, which might be rebutted by the mere admission that such was not the fact. But the law is not so now. There must be a promise, a new contract, though founded on the original consideration, to take a case out of the statute. If the promise is not express, the case must be such that it can be fairly implied. There must, at the least, be a plain admission that the debt is due, and that- the party is willing to pay it.
 
 (Allen
 
 v.
 
 Webster,
 
 15
 
 Wend.
 
 284;
 
 Stafford
 
 v.
 
 Richardson, id.
 
 302;
 
 Bell
 
 v.
 
 Morrison,
 
 1
 
 Peters,
 
 362.) It is the new promise and not the mere acknowledgment, that revives the debt and takes it out of the statute.
 
 (Rosevelt
 
 v.
 
 Mark
 
 6
 
 John. Ch.
 
 
 *532
 
 290.) This doctrine is sustained by many decisions in other states; but I do not think it necessary to cite them.
 

 The case of
 
 Whitcomb
 
 v.
 
 Whiting
 
 has, to a limited extent, been followed in Massachusetts;
 
 (Cady
 
 v.
 
 Shepherd,
 
 11
 
 Pick,
 
 400;
 
 Bridge
 
 v.
 
 Gray,
 
 14
 
 id.
 
 55;
 
 Sigourney
 
 v.
 
 Drury, id,
 
 387, 391, 2;
 
 Vinal
 
 v.
 
 Burrill,
 
 16
 
 id.
 
 401;) in Connecticut;
 
 (Bond
 
 v.
 
 Lathrop,
 
 4
 
 Conn. R.
 
 336;
 
 Coit
 
 v.
 
 Tracy,
 
 8 id. 268;
 
 Austin
 
 v.
 
 Bostwick,
 
 9 id. 496;
 
 Clark
 
 v.
 
 Sigourney,
 
 17
 
 id.
 
 511;) in Maine;
 
 (Parker
 
 v.
 
 Merrill,
 
 6
 
 Greenl.
 
 41;
 
 Pike
 
 v. Warren, 15
 
 Maine,
 
 390;
 
 Dinsmore
 
 v.
 
 Dinsmore,
 
 21 id. 433;
 
 Shepley
 
 v.
 
 Waterhouse,
 
 22
 
 id.
 
 497;) and in Vermont.
 
 (Joslyn
 
 v.
 
 Smith,
 
 13 Verm. 353;
 
 Wheelock
 
 v.
 
 Doolittle,
 
 18 id. 440.) But I think the judgment under review would not be upheld in either of those states. In North Carolina it has been held tha the acknowledgment of the debt by one partner, though afte the dissolution, will prevent the operation of the statute.
 
 (McIntire
 
 v.
 
 Oliver,
 
 2
 
 Hawks,
 
 209.) And the same has been decided in Georgia, provided the new promise is made before the action is barred; but not when the new promise is made after-wards, as it was in the case before us.
 
 (Brewster
 
 v.
 
 Hardeman, Dudley, 138.)
 
 It has been decided by the court of appeals in South Carolina, that a promise by one partner made after the dissolution, and after the statute had run, will not charge the other partner.
 
 (Steele
 
 v.
 
 Jennings,
 
 1
 
 McMullen,
 
 297.) In the
 
 Exeter Bank
 
 v.
 
 Sullivan,
 
 (6
 
 N. Hamp. R.
 
 124,) the authority of
 
 Whitcomb
 
 v.
 
 Whiting
 
 was wholly denied; and the court held that a payment by one of the joint makers of a promissory note did not take the case out of the statute as to the other. In Alabama, a promise by the principal debtor will not revive the demand against a co-debtor, who is a surety.
 
 (Lowther
 
 v.
 
 Chappel,
 
 8
 
 Alab. R.
 
 353.) In Tennessee, a promise by one partner after the dissolution of the partnership, to pay a note made by the firm, does not take the case out of the statute of limitations as to the other partner.
 
 (Belote’s Ex’rs
 
 v.
 
 Wynne,
 
 7
 
 Yerger,
 
 534;
 
 Muse
 
 v.
 
 Donelson,
 
 2
 
 Humph.
 
 166.) This is also the rule in Pennsylvania.
 
 (Levy
 
 v.
 
 Cadet,
 
 17
 
 S. & R.
 
 126:
 
 Searight
 
 v.
 
 Craighead, 1 Pen. & Watts,
 
 135.) It is also held in Indiana, that the power of one partner to bind the
 
 *533
 
 other by the admission of a debt, ceases with the partnership
 
 (Yandes
 
 v.
 
 Lefavour, 2 Blackf.
 
 371.) And in
 
 Bell
 
 v. Morrison, (1
 
 Peters,
 
 351,) the supreme court of the United States followed the decisions in Kentucky, and held that the dissolution of the partnership put an end to the authority of the partners to bind each other by any new engagement; and consequently that the acknowledgment of a debt by one partner, after the dissolution, would not take the case out of the statute of limitations. The elaborate argument of Mr. Justice Story, who delivered the opinion of the court, covers the whole field of discussion, and stands on principles, which, though they may be disregarded, cannot be overthrown.
 

 I have not .stopped to inquire whether the statute operates apon the debt or the remedy; for though this might be a point to be considered in a court of conscience, it is of no practical importance in a court of law. We are not dealing with moral, but with legal obligations; and it is idle, to talk of a debt w'here there is no legal obligation to pay it.
 

 I am of opinion that the judgment should be reversed, and that judgment should be rendered for the defendants on the verdict.
 

 Jewett, C. J.
 

 also delivered a written opinion in favor of reversal.
 

 And thereupon the judgment of the supreme court was reversed, and judgment awarded for the defendants on the special verdict.